IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUSSEIN SALEH SALEM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 24-cv-11522 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| KRISTI NOEM, in her official capacity | ) | |
| as Secretary of Homeland Security, | ) | |
| et al.,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hussein Saleh Salem ("plaintiff" or "Hussein"), a citizen of the United States,

brings this action on behalf of his son, Saleh Hussain Salem ("Saleh"), a citizen of Yemen,

against the U.S. Secretary of the Department of Homeland Security ("DHS"), the U.S. Secretary

of State, the Director of the FBI, the Chicago Field Office Director of the U.S. Citizenship and

Immigration Services ("USCIS"), and the U.S. Special Envoy for Middle East Humanitarian

Issues (collectively, "defendants") to compel further action on Saleh's I-130 visa application.

Hussein purports to bring his claims under the under the Administrative Procedure Act, 5 U.S.C.

§706(1), and the Mandamus Act, 28 U.S.C. §1361.

Defendants now move to dismiss the complaint pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6), arguing that the Court lacks subject matter jurisdiction, and that

plaintiff has otherwise failed to state a claim upon which relief can be granted. Despite

appearing through counsel and agreeing to a briefing schedule with a specified date to file his

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Secretary of the Department of
Homeland Security Kristi Noem, Secretary of State Marco Rubio, Director of the FBI Kash Patel, and
Chicago Field Office Director of the U.S. Citizenship and Immigration Services Kevin Riddle for the
previously named defendants.

response brief in a January 21, 2025 joint status report, (Dckt. #9), plaintiff failed to respond to defendants' motion. For the reasons set forth below, defendants' motion to dismiss, (Dckt. #7), is granted.

## I.    BACKGROUND

### A.    The I-130 Visa Application Process

The Immigration and Nationality Act ("INA") governs the admission of noncitizens into the United States. 8 U.S.C. §1101 *et seq*. Pursuant to the INA, "a noncitizen seeking to reside permanently in the United States and obtain a path to eventual citizenship must obtain an immigrant visa." *Ebrahimi v. Blinken*, 732 F.Supp.3d 894, 899 (N.D.Ill. 2024) (citing 8 U.S.C. §§1101(a)(15), 1181(a), 1182(a)(7), 1184(a)). A noncitizen seeking admission to the United States bears the burden of establishing eligibility to receive a visa. *See* 8 U.S.C. §1361; 22 C.F.R. §40.6.

"One means of obtaining an immigrant visa is for a U.S. citizen to file a file a Form I-130 petition for a family-based immigrant visa" with the USCIS. *Patel v. Sanders*, No. 24 C 8386, 2025 WL 1039505, at *1 (N.D.Ill. Apr. 7, 2025) (citing 8 U.S.C. §1154(a); 8 C.F.R. §204.2). After USCIS reviews and approves the I-130 application, the noncitizen must complete a Form DS-260 ("Application for Immigrant Visa and Alien Registration"). USCIS then transfers the case to the U.S. Consulate so a consular officer can interview the potential visa recipient. *See* 8 U.S.C. §§1154(b), 1201(a), (h). "At the conclusion of the interview between the consular officer and the noncitizen, the consular officer must either issue or refuse the visa." *Patel*, 2025 WL 1039505, at *1; 22 C.F.R. §42.81(a) ("[T]he consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.").

2

Pursuant to §221(g):

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from the statements in the application . . . that such alien is ineligible to receive a visa . . . , (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa . . .

8 U.S.C. §1201(g). Moreover, if a consular officer refuses to issue a visa, they must "inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available." 22 C.F.R. §42.81(b).

### B.   Plaintiff's Form I-130 Application

The following facts are taken from the allegations in the complaint, (Dckt. #1), "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Plaintiff Hussein was born in 1980 in Yemen. (Dckt. #1 at 2). He subsequently immigrated to the United States and became a naturalized citizen. (*Id.*). On June 1, 2021, Hussein filed a Form I-130 ("Petition for Alien Relative") on behalf of his son Saleh, a citizen of Yemen. (*Id.* at 3). On or about June 1, 2022, USCIS approved the I-130 petition and transferred the case to the U.S. Department of State for visa processing. (*Id.*).

On June 30, 2022, plaintiff submitted the Form DS-260 Application. (*Id.*). The U.S. Embassy in Djibouti scheduled Saleh's visa interview for February 9, 2023. (*Id.*). Saleh attended the interview as directed. (*Id.*). Subsequently, a consular officer refused the application "under 221(g) and requested a DNA test for proof of parentage." (*Id.*; *see also* Dckt. #1-2 at 3). Although plaintiff did not attach the refusal notice to his complaint, defendants include in their

3

motion a screenshot of plaintiff's application status (as of January 15, 2025), which indicates that

the application was "Refused" and provides in relevant part:

> A U.S. consular officer has adjudicated and refused your visa application. Please
> follow any instructions provided by the consular officer. If you were informed by
> the consular officer that your case was refused for administrative processing, your
> case will remain refused which undergoing such processing. *You will receive*
> *another adjudication once such processing is complete.*

(Dckt. #8 at 4) (emphasis added).

On June 8, 2024, plaintiff contacted the Embassy via email requesting a status update on

the application and confirming that he had previously provided the requested DNA test. (Dckt.

#1-2 at 3). A representative from the Embassy responded on July 10, 2024, as follows:

> Thank you for your email. After a review of the documents submitted, this case
> remains refused under 221G. Please submit further evidence as requested, which
> may include but is not limited to:
>
> - Evidence of age via biodocument, such as passport, issued prior to filing of
>   petition
> - Clarification-does Saleh have a twin?

(*Id.*). Plaintiff responded and provided the requested information on July 18, 2024. (*Id.* at 4).

An Embassy representative responded via email on August 7, 2024, and stated as follows:

> Thank you for contacting the U.S. Embassy in Djibouti. *We have forwarded your*
> *case to the adjudicating officer for review. Once they have completed their review*
> *you will be contacted with next steps.*

(*Id.* at 6) (emphasis added).

Plaintiff filed this action on November 8, 2024, seeking to compel the adjudication of his

application. (Dckt. #1). Although plaintiff purports to bring this case under both the

Administrative Procedure Act ("APA"), 5 U.S.C. §706(1), and the Mandamus Act, 28 U.S.C.

§1361, his single claim for relief references only the APA. In it, plaintiff alleges that defendants'

delay in adjudicating the visa application violated the APA, which mandates that "within a

reasonable time, each agency shall proceed to conclude a matter presented to it," and that courts

"shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C.

§§555(b), 706(1). Plaintiff asks the Court to (1) compel defendants to "perform their duty to rule

upon Plaintiff's DS260, Immigrant Visa Electronic Application, filed on behalf of his son;" and

(2) compel the FBI to complete its background and fingerprint process. (Dckt. #1 at 3–4).

Defendants now move to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6).

## II.     LEGAL STANDARD

Under Rule 12(b)(1), a claim should be dismissed if the federal court lacks jurisdiction

over the subject matter of the claim. "Motions to dismiss under Rule 12(b)(1) are meant to test

the sufficiency of the complaint, not to decide the merits of the case," and the Court "accept[s] as

true the well pleaded factual allegations, drawing all reasonable inferences in favor of the

plaintiff" when determining whether there is subject matter jurisdiction. *Ctr. for Dermatology &

Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (cleaned up). Nevertheless, "a

plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the

jurisdictional requirements have been met." *Id.* at 588-89.

To survive a Rule 12(b)(6) motion to dismiss, the complaint must "state a claim to relief

that is plausible on its face" for each count at issue. *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the Court

construes "the complaint in the light most favorable to the [non-moving party] accepting as true

all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor."

*Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). However, the Court "need not

accept as true statements of law or unsupported conclusory factual allegations." *Id.* Moreover, plausibility is not satisfied by mere "labels and conclusions," "formulaic recitation of the elements of a cause of action," or facts "merely consistent" with a defendant's liability. *Twombly*, 550 U.S. at 545, 555.

## III. ANALYSIS

In their motion to dismiss, defendants argue that (1) plaintiff lacks standing to bring his claims against the named defendants because they do not have the power to adjudicate the visa application; (2) plaintiff's claim is moot in light of the February 2023 refusal of his application by the consular officer; (3) the doctrine of consular nonreviewability renders plaintiff's claim non-justiciable; and (4) plaintiff's claim of unreasonable delay is otherwise meritless. Again, despite agreeing to the briefing schedule, plaintiff failed to file a response to the motion to dismiss, thus waiving any argument in opposition thereto. *See, e.g.*, *Sroga v. Rendered Servs. Inc.*, No. 19-CV-2299, 2019 WL 6173424, at *1 (N.D.Ill. Nov. 20, 2019) ("It is a longstanding rule that a plaintiff waives his claims when he fails to develop arguments or fails to respond to alleged deficiencies in a motion to dismiss.") (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (recognizing that a complaint is subject to dismissal where a plaintiff does not file a response supporting the legal adequacy of the complaint). Nonetheless, in light of the importance of plaintiff's claim, i.e., the immigration status of his minor son residing abroad, the Court will address each of defendants' arguments on the merits.

### A. Standing/Mootness

Article III of the Constitution "limits the jurisdiction of federal courts 'to the resolution of 'Cases' and 'Controversies.'"" *Brown v. Kemp*, 86 F.4th 745, 760–61 (7th Cir. 2023), *quoting*

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, (2021). Indeed, "no principle is more
fundamental to the judiciary's proper role in our system of government than the constitutional
limitation of federal court jurisdiction to actual cases or controversies." *Spokeo v. Robins*, 578
U.S. 330, 337 (2016), *quoting Raines v. Byrd*, 521 U.S. 811, 818 (1997). This constitutional
limitation "subsists through all stages of federal judicial proceedings," meaning that there must
always be an "actual, ongoing" controversy for a federal court to have subject-matter
jurisdiction. *Lewis* v. *Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). At the outset of litigation, a
controversy exists if the plaintiff makes a "threefold demonstration of (1) an injury in-fact; (2)
fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable
decision from the court." *Patel*, 2025 WL 1039505, at \*3 (cleaned up); *see also Ebrahimi*, 732
F.Supp.3d at 902 ("The plaintiff bears the burden of establishing his standing to bring suit").

### 1. Plaintiff lacks standing to pursue his claims against certain named defendants.

Defendants first argue that plaintiff lacks standing to bring his claims against the named
defendants because none of them have the power to adjudicate plaintiff's visa application and, as
such, plaintiff cannot satisfy the redressability prong. "Redressability examines whether the
relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized
injury alleged by the plaintiff." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F.Supp.3d 1, 9
(D.D.C. 2022), *quoting Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996).
Where, as here, the particularized injury about which plaintiff complains is a delay in
adjudicating a visa application, plaintiff has standing "to proceed against each defendant only to
the extent that an order from this Court compelling that defendant to act on plaintiff's petition
would redress plaintiff's alleged injury." *Al-Gharawy*, 617 F.Supp.3d at 9 (cleaned up). Not all
of the named defendants satisfy this test.

7

First, with respect to the Secretary of DHS and the Chicago Director of USCIS, plaintiff himself appears to acknowledge that DHS and USCIS completed their respective roles in the process after the USCIS (an agency within DHS) "approved the petition and referred it to the U.S. Department of State for Visa processing on or about June 1st, 2022," where it remains in the adjudication process. (Dckt. #1 at 3). "Thus, with respect to USCIS, DHS, and the officials who lead them, there is no relief that the Court could order that would remedy Plaintiffs' injury—that is, the *Embassy's* delay in adjudicating Plaintiffs' visas." *Al-Gharawy*, 617 F.Supp.3d at 9; *see also Shamim v. Rubio*, No. 25-CV-50016, 2025 WL 1399166, at *2 (N.D.Ill. May 14, 2025) (no standing against the Secretary of DHS where "USCIS approved Shamim's I-30 application and forwarded it to the consular's office, completing its role in the visa process."). Accordingly, the Secretary of DHS and the Chicago Director of USCIS are dismissed for lack of standing.

Second, with respect to the Director of the FBI and the U.S. Special Envoy for Middle East Humanitarian Issues, plaintiff fails to include allegations (or any response to the motion) that would support a finding that these defendants could possibly redress plaintiff's injury. Indeed, although plaintiff alleges that the "FBI is responsible for the proper background clearance," (Dckt. #1 at 2), there is no indication that the FBI is currently involved in the adjudication delay or otherwise has the power to adjudicate plaintiff's visa application. Moreover, plaintiff provides *no* allegations regarding the Special Envoy's involvement in the process. Accordingly, the Director of the FBI and the U.S. Special Envoy for the Middle East are dismissed for lack of standing. *See Joshi v. Garland*, 728 F.Supp.3d 1028, 1034 (D.Neb. 2024) ("There's simply not enough alleged to infer any delay or wrongdoing on the FBI's part, or to connect the FBI's alleged action or inaction to the plaintiffs' alleged injury.").

8

Lastly, the Court disagrees that plaintiff lacks standing to bring his claims against the
Secretary of State. As defendants explain, the INA vests the power to grant or deny a visa
exclusively to consular offices, thus precluding the review of visa applications by the Secretary
of State. *See* 8 U.S.C. §1104(a) ("The Secretary of State shall be charged with the administration
and the enforcement of the provisions of this chapter and all other immigration and nationality
laws relating to (1) the powers, duties, and functions of diplomatic and consular officers of the
United States, *except those powers, duties, and functions conferred upon the consular officers
relating to the granting or refusal of visas*") (emphasis added). However, as courts have noted,
this language does not necessarily preclude the Secretary of State—who oversees the State
Department—from "directing consular officers to conclude . . . matters presented to them within
a reasonable time." *Al-Gharawy*, 617 F.Supp.3d at 10 (cleaned up); *see also Hamdan v.
Oudkirk*, No. CV 24-1001 (BAH), 2024 WL 4553983, at *4 (D.D.C. Oct. 23, 2024) ("In this
case, where plaintiff does not challenge the consular officer's adjudication of his visa application
but seeks instead only timely adjudication . . . nothing precludes [the Secretary] from directing
the consular officers to decide [the] pending applications within a reasonable time, as the APA
requires."). As such, the Court will continue with its analysis as to the Secretary of State. *See
Shamim v. Rubio*, No. 25-CV-50016, 2025 WL 1399166, at *2 (N.D.Ill. May 14, 2025)
(recognizing the split of authority and proceeding with its analysis notwithstanding *its* finding
that plaintiff "can't sue Defendant Rubio").

### 2. Plaintiff's lawsuit is not moot.

Next, defendants argue that the Court must dismiss plaintiff's complaint because a
consular officer reviewed and refused his visa application in February 2023, thereby rendering

plaintiff's claims of unreasonable delay in adjudicating that same application moot. The Court disagrees.

First, although defendants couch this argument in the context of mootness, where, as here, the consular officer refused the application under Section 221(g) *before* plaintiff filed this case "the relevant legal question" is one of standing. *Patel*, 2025 WL 1039505, at *4; *see also Ebrahimi*, 732 F.Supp.3d at 902 (reframing mootness argument as standing when the basis is an event occurring *prior* to the litigation commencing); *Ramizi v. Blinken*, 745 F.Supp.3d 244, 256 (E.D.N.C. 2024) ("Plaintiffs' claim is not moot because nothing has occurred during the pendency of this action that makes it impossible for a court to grant effective relief to Plaintiffs.") (cleaned up). "Reframing this dispute as one of standing [then], the key question is whether [plaintiff] has suffered the injury of which []he complains, namely not receiving a final determination on the Application, such that this Court could order Defendants to provide a final determination." *Patel*, 2025 WL 1039505, at *4. Alternatively, plaintiff "may have already received a final determination, and if so, this Court cannot order Defendants to do something that has already occurred." *Id.*

Turning to the key question of standing, the Court acknowledges that courts in this District (and elsewhere) have reached differing conclusions thereon, and the Seventh Circuit has yet to weigh in. *Compare Ebrahimi*, 732 F.Supp.3d at 903–05 (finding plaintiff had standing even after the consular officer had refused the visa petition because the State Department had communicated that the petition "will receive another adjudication") and *Al-Gharawy*, 617 F.Supp.3d at 12 (same) *with Nasir v. U.S. Dep't of State*, 749 F.Supp.3d 938, 942–44 (N.D.Ill. 2024) (no standing where consular officer refused a visa petition, and then put petition through

additional security screening) and *Yaghoubnezhad v. Stufft*, No. 23-cv-3094, 2024 WL 2077551,

at *10 (D.D.C. May 9, 2024) (same).

This Court finds that a closer look at the reasoning in *Ebrahimi* and *Nasir* is helpful to its

analysis.  Indeed, as the *Patel* court observed:

> In *Ebrahimi*, "not only was Akbar's application refused for administrative
> processing under Section 221(g), but he was also later informed by the State
> Department that further adjudication would be necessary."  732 F.Supp.3d at 904.
> More specifically, he received a notice from the State Department that stated
> "[y]ou will receive another adjudication once such [administrative] processing is
> complete."  *Id.* (emphasis in original).    The court reasoned that the State
> Department's "use of 'will'" "all but guarantees [the applicant] another
> adjudication" and differentiated the case from a simple refusal under Section 221(g)
> without more.  *Id.*
>
> By comparison, in *Nasir*, while the consular officer requested additional
> information from the individual seeking a visa, there was no promise of an
> additional determination.  749 F.Supp.3d at 940, 942.  Rather, the consular officer
> merely informed the applicant that the application would undergo further security
> screening.  *Id.* at 942.  However, the court did note that under the statutory scheme,
> "[t]here is no mechanism for the consular officer to put the application on hold
> following an interview, pending some other 'final decision' not described in the
> regulations."  *Id.* (citation omitted).

*Patel*, 2025 WL 1039505, at *4.

Here, accepting the allegations of plaintiff's complaint as true and drawing all inferences

in his favor, this case falls more squarely in line with *Ebrahim* and its progeny than with *Nasir*.

As in *Ebrahim*, the consular officer here refused plaintiff's application under Section 221(g); the

notice of refusal indicated that plaintiff "will receive another adjudication once such processing

is complete;" the Embassy requested additional information, including a DNA test, and further

documentation; and the Embassy subsequently advised plaintiff that his case had been forwarded

"to the adjudicating officer for review," and that once "they have completed their review [he]

will be contacted with next steps."  "Together, this sufficiently establishes that the government

has not concluded its review and adjudication of the Application such that [plaintiff] has an

injury that this Court can redress. *Patel*, 2025 WL 1039505, at *5. Therefore, plaintiff has standing to bring this case.

### B.     Consular Nonreviewability

Next, defendants argue that the doctrine of consular nonreviewability further renders this action non-justiciable. The Court disagrees in light of its finding that plaintiff's application remains in adjudication.

"Congress has delegated the power to determine who may enter the country to the Executive Branch, and courts generally have no authority to second-guess the Executive's decisions." *Yafai v. Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 769–70 (1972)). "The doctrine of consular nonreviewability stems from these separation-of-powers principles. It instructs that ordinarily, visa decisions made by consular officers abroad are not subject to judicial review." *Pak v. Biden*, 91 F.4th 896, 900 (7th Cir. 2024) (citing *Hazama v. Tillerson*, 851 F.3d 706, 708 (7th Cir. 2017)). Where, as here, however, the Court has concluded that no final decision has been reached on plaintiff's visa application, the Court sides with "the majority of the district courts in this Circuit," and "finds that the doctrine of consular non-reviewability does not bar review of [plaintiff's] claim for unreasonable delay." *Karbasian v. U.S. Dep't of State*, No. 24-CV-1484-RJD, 2025 WL 821597, at *11 (S.D.Ill. Mar. 14, 2025); *see also Jama v. Wahid*, No. 24-CV-583, 2025 WL 346811, at *4 (E.D.Wis. Jan. 30, 2025) ("[W]here a consular officer has refused a visa application under section 221(g) and provided assurances of further adjudication . . . courts have overwhelmingly concluded that the doctrine of consular nonreviewability does not apply.").

### C.    Failure to State a Claim

Defendants further argue that plaintiff has otherwise failed state a claim under Rule 12(b)(6) for unreasonable delay under the APA.  On this point, the Court agrees.

Again, the APA mandates that "within a reasonable time, each agency shall proceed to conclude a matter presented to it," and that courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. §§555(b), 706(1).  Although not officially endorsed by the Seventh Circuit, "courts generally use the six-factor test from *Telecomms. Research & Action Ctr. v. FCC ["TRAC"]*, 750 F.2d 70, 80 (D.C. Cir. 1984) to evaluate claims of unreasonable delay in the processing of visa petitions under the APA." *Lubega v. Mayorkas*, No. 23 CV 17177, 2024 WL 4206425, at *1 (N.D.Ill. Sept. 11, 2024); *see also Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) ("The D.C. Circuit has set forth a general framework for deciding claims of agency delay that courts can apply to unanswered rulemaking petitions.").

Under the "TRAC" test, courts consider:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*TRAC*, 750 F.2d at 80.  Moreover, "[c]ourts routinely analyze the factors in immigration cases at the motion to dismiss stage." *Romero v. Scott*, No. 24 CV 4372, 2025 WL 815071, at *4 (N.D.Ill. Mar. 12, 2025) (collecting cases).

13

Here, by failing to respond to defendants' motion, plaintiff has waived any argument with respect to the Court's application of the *TRAC* factors. *Ebrahimi*, 732 F.Supp.3d at 910 ("By electing not to respond to defendants-respondents' [TRAC analysis] . . . plaintiffs-petitioners have waived those arguments."). Nonetheless, for the sake of completeness, the Court has reviewed the TRAC factors, and it finds that plaintiff has failed to state a claim under the APA.

### 1. Factors One and Two

The "first and most important" factor is whether a cognizable "rule of reason" governs the time agencies take to make decisions. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), *quoting TRAC*, 750 F.2d at 80. "Courts often analyze the second TRAC factor, whether any congressionally imposed timetable or indication of expected speed exists, with the first factor because they both analyze whether there is sufficient rhyme and reason to explain the Government's response time." *Patel*, 2025 WL 1039505, at *7 (cleaned up).

Defendants properly note that "[t]here is no congressionally mandated timeline for resolving visa adjudications." *Jama*, 2025 WL 346811, at *9 (collecting cases). "When there is no 'congressionally supplied timeframe, courts typically look to case law for guidance.'" *Ebrahimi*, 2024 WL 2020038, at *11, *quoting Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *5 (D.D.C. Sept. 15, 2021). While "[n]o bright lines have been drawn in this context," courts "have generally found that immigration delays in excess" of five years are unreasonable, "while those between three to five years are often not unreasonable." *Orozco v. Blinken*, No. 22 C 5134, 2023 WL 4595377, at *4 (N.D.Ill. July 18, 2023), *quoting Sarlak v. Pompeo*, No. 20 C 35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "Indeed, case law typically considers the two-year mark to be the lowest threshold for a

finding of unreasonable delay in visa processing cases." *Ebrahimi*, 732 F.Supp.3d at 911 (cleaned up).

Here, just over two years have passed since plaintiff's initial refusal notice in February 2023, arguably placing plaintiff's claim at the lowest possible threshold of unreasonable delay. However, courts have routinely found similar delays around the two-year mark to be insufficient to state a claim for unreasonable delay. *Gilani v. Bitter*, No. 23-cv-03288, 2024 WL 1839455, at *5 (C.D.Ill. Apr. 26, 2024) (delay of two years is insufficient for a finding of unreasonable delay under APA); *Ghadami v. United States Dep't of Homeland Sec.*, No. 19 C 397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (twenty-five month delay not unreasonable); *Bagherian v. Pompeo*, 442 F.Supp.3d 87, 94–95 (D.D.C. 2020) (same). Thus, these two factors favor the defendants.

### 2. Factors Three and Five

"The third and fifth TRAC factors consider that '(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake' and '(5) the court should also take into account the nature and extent of the interests prejudiced by delay[.]" *Ebrahimi*, 732 F.Supp.3d at 912, *quoting TRAC*, 750 F.2d at 80. Here, while plaintiff's continued separation from his teenaged son would certainly cause harm to their own health and welfare, plaintiff has neither alleged in his complaint nor filed a response brief setting forth specific facts showing that Saleh is facing immediate danger in Yemen or that the delay will otherwise cause extreme prejudice. As such, these two factors also favor the defendants. *See Lubega*, 2024 WL 4206425, at *2.

15

### 3. Factor Four

"The fourth factor considers the effect of prioritizing one agency action over others . . . [and] directs the Court to consider whether expediting the decision in this case will impact other agency decisions of equal or higher priority." *Lubega*, 2024 WL 4206425, at \*2. Expediting plaintiff's petition here would allow plaintiff to "skip ahead of other petitioners who filed an application before [him], but who are also waiting for adjudication," a result held improper by the Seventh Circuit. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017). This factor favors the defendants as well. *See Romero*, 2025 WL 815071, at \*4 ("As to the fourth factor, expediting the application would essentially allow Romero to jump the line, resulting in the redistribution of agency resources but no agency-wide net gain.") (cleaned up); *Lubega*, 2024 WL 4206425, at \*2 ("Petitioner has no basis to skip the line and have his petition processed before the thousands of other visa applicants who have been waiting for a determination on their own petitions").

### 4. Factor Six

Lastly, plaintiff has not alleged any impropriety in the processing of his application. As such, this factor does not support his claim. *Romero*, 2025 WL 815071, at \*4 ("Romero does not allege bad faith or any impropriety, so the sixth factor is unhelpful."); *Ebrahimi*, 732 F.Supp.3d at 913 (same).

In sum, on the instant record, all of the *TRAC* factors weigh in favor of defendants and the Court thus finds that plaintiff has failed to properly state a claim for unreasonable delay under the APA.[2]

---

[2] To the extent that plaintiff intended to also seek relief under the Mandamus Act—despite not expressly pleading such a claim—that claim would fall short. Mandamus is an "extraordinary remedy," *United States v. Vinyard*, 539 F.3d 589, 591 (7th Cir. 2008), that is only granted if a plaintiff can demonstrate "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no

16

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, (Dckt. #7), is granted as follows. Plaintiff's claims against defendants the Secretary of DHS, the Director of the FBI, the Chicago Field Office Director of USCIS, and the U.S. Special Envoy for Middle East Humanitarian Issues are dismissed without prejudice for lack of standing. Plaintiff's claim against defendant Secretary of State is dismissed on the merits without prejudice. Plaintiff is free to seek leave to re-open this case if he believes that he can file an amended complaint consistent with the dictates of this Memorandum Opinion and Order and the requirements of Federal Rule of Civil Procedure 11.

**DATE: June 3, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**

---

other adequate remedy is available," *Calderon-Ramirez*, 877 F.3d at 275. Plaintiff's purported mandamus claim here would fail, "as it often does in these cases, because there is an available avenue for relief under the APA." *Lubega*, 2024 WL 4206425, at *1 (collecting cases).